**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**

UNITED STATES OF AMERICA

        Plaintiff,

v.                                         Criminal No.:5:15-CR-45
                                                (JUDGE BAILEY)

CHRISTOPHER GYORKO,

        Defendant,

NINA K. GYORKO,

        Petitioner.

## **REPORT AND RECOMMENDATION**

### I.    Introduction

This matter stems from a multiple-defendant criminal matter charging controlled substance offenses. One of the Defendants in the underlying criminal matter, Christopher T. Gyorko (hereinafter, the "Defendant"), pleaded guilty to Conspiracy to Possess with Intent to Distribute Heroin. As part of the Defendant's plea agreement, the Defendant agreed to forfeit a 2007 Chrysler 300M, Vehicle Identification Number: 2C3LA63H77H751078 (hereinafter, the "vehicle").

On January 5, 2016, the Petitioner, who is also the Defendant's mother, Nina K. Gyorko, proceeding *pro se*, filed a Letter Motion for Return of Property/Post Plea Agreement. ECF No. 181. The Petitioner's motion argues that she is the true owner of the vehicle thus, it should not be forfeited. On March 8, 2016, the Petitioner filed a duplicative Letter Motion for Return of Property. ECF No. 199. On July 19, 2016, the Petitioner moved this court for hearing regarding her return of property motion. ECF No. 244. On August 29, 2016, the court granted the Petitioner's motion for

a hearing. ECF No. 266.

A hearing was held on September 28, 2016, before Magistrate Judge James E. Seibert. The United States (hereinafter, the "Government") appeared by its counsel Denae Demasi-Lemon, Esq. The Petitioner appeared in person and proceeded *pro se*.

For the reasons discussed below, the court finds that the Petitioner was reasonably without cause to believe that the vehicle was subject to forfeiture when she purchased it. Therefore, the court recommends that the Petitioner's [ECF No. 181] Letter Motion be **GRANTED** and the vehicle at issue be returned to her free of any liens or encumbrances incurred by the Government related to this matter. The court further recommends that the Petitioners duplicitive [ECF No. 199] Letter Motion be **DENIED AS MOOT.**

## II. Discussion

### A. Applicable Law

The court largely adopts the Government's rendition of the law. There are two means by which a third party may recover property that is subject to forfeiture. 21 U.S.C. § 853(n)(6) provides that a petitioner may recover property if:

> (A) the petitioner has a legal right, title, or interest in the property, and such right, title, or interest renders the order of forfeiture invalid in whole or in part because the right, title, or interest was vested in the petitioner rather than the defendant or was superior to any right, title, or interest of the defendant at the time of the commission of the acts which gave rise to the forfeiture of the property under this section; or
>
> (B) the petitioner is a bona fide purchaser for value of the right, title, or interest in the property and was at the time of purchase reasonably without cause to believe that the property was subject to forfeiture under this section; the court shall amend the order of forfeiture in accordance with its determination.

Here, it is undisputed that the vehicle was acquired by the Petitioner after the commission of the underlined crimes therefore, the Petitioner cannot satisfy § 853(n)(6)(A). Thus, the Petitioner must

satisfy § 853(n)(6)(B) if she is to prevail. Section 853(n)(6)(B) requires the Petitioner to prove three things. First, she must have a legal interest in the vehicle. The Government stipulates that the Petitioner has a legal interest in the vehicle. Second, the interest in the vehicle was acquired as a bona fide purchase for value. The Government stipulates that the Petitioner paid value for the vehicle. Third, at the time of the purchase the Petitioner was reasonably without cause to believe that the property was subject to forfeiture.

"Section 853(n)(6) speaks of *cause* to believe, not actual knowledge." *United States v. Parenteau*, 647 F. App'x 601, 606 (6th Cir. 2016) (emphasis original). "This standard, significantly, is objective, not subjective. In other words, a genuinely-held belief that property is not subject to forfeiture is unavailing unless that belief was objectively reasonable in the circumstances." *In re Moffitt, Zwerling & Kemler, P.C.*, 846 F. Supp. 463, 472 (E.D. Va. 1994).

The court, however, does not adopt the Government's rendition of the law entirely. For example, the Government states:

> A Petitioner is not "objectively reasonable" if she is willfully blind. [*In re Moffit Zwerling & Kemler, P.C.*, 846 F. Supp. at 474-75]. When warranted a duty of reasonable inquiry is imposed on the petitioner to establish objective reasonableness. *Id*. at 474 (to succeed under Section 853(n)(6)(B), petitioner "must ask sufficient direct questions and take whatever further steps [are necessary] . . . to ensure that a belief that the [property is] legitimate is objectively reasonable").

ECF No. 283 at 7. However, the court in *In re Moffit Zwerling & Kemler, P.C.* went on to state that, "No precise formula exists to define the appropriate inquiry in all circumstances. Each situation may be different." 846 F. Supp. at 474. Indeed, that case involved a law firm, a sophisticated party, in an arms-length transaction. In contrast, the Petitioner here is an unsophisticated party dealing with her son.

Moreover, the Government agues that knowledge that the Defendant was engaged in "some

-3-

sort" or "some form" of criminal activity is enough to preclude the Petitioners success. ECF No. 283 at 7-8. However, the cases cited by the Government—*United States v. Cox*, 575 F.3d 352, 356-57 (4th Cir. 2009); *United States v. Galemmo*, 2016 WL 4363155, at *3 (6th Cir. Aug. 16, 2016); *United States v. Coffman*, 612 F. App'x 278 (6th Cir. 2015); and *United States v. Hernandez-Morales*, 2014 WL 7252045, *9 (N.D. Iowa Dec. 16, 2014)—all deal with petitioners who were not just aware of "some sort" of criminal activity but rather the precise circumstances which caused the property to be subject to forfeiture. Indeed, a plain reading of section 853(n)(6)(B) shows that the petitioner must not simply be aware of any criminal activity but must have reasonable cause to believe that the property is subject to forfeiture.

**B.    Burden of Proof**

The Petitioner must prove, by a preponderance of the evidence, that she qualifies for relief under 21 U.S.C. § 853(n)(6). *Pacheco v. Serendensky*, 393 F.3d 348, 351 (2d Cir. 2004). The elements of § 853(n)(6) are distinct and the petitioner bears the burden of proving each prong. *United States v. Parenteau*, 647 F. App'x 601, 604 (6th Cir. 2016). Therefore, because the Government stipulates that the Petitioner satisfies the first two prongs of the test, the Petitioner must prove, by a preponderance of the evidence, that at the time of the purchase she was reasonably without cause to believe that the vehicle was subject to forfeiture.

**C.    The Hearing**

1.    <u>The Petitioner's Testimony</u>

The Petitioner testified by reading a statement which she had prepared. The Petitioner testified that she purchased the vehicle from the Defendant by trading him her previous car along with $4500. The Petitioner recalled that this sale took place about May 1, 2015. She stated that at

the time of the sale she was unaware that the Defendant was under an investigation. She later learned during a deposition that the Defendant was notified on April 24, 2015, that his phone had been wiretapped.

The Petitioner acknowledged that she may have placed phone calls to the Marshall County Sheriff's office inquiring about the Defendant. She testified that if she did make those calls they would have been at the request of the Defendant. She further stated that this sort of request from the Defendant would not be out of the ordinary given his past criminal history.

The Petitioner concluded by testifying that:

> I could never have suspected the scope and seriousness of the crime that he was later charged with and subsequently pled guilty to. I certainly could not have speculated that the personal property that he had previously owned would be subject to forfeiture. I could not reasonably know that he was under federal investigation as no one told me. Given [the Defendant's] criminal history, this was completely inconsistent with anything else he had been charged with previously.

The Government cross examined the Petitioner and attempted to impeach her credibility. The Government questioned the Petitioner regarding an administrative law judge's ruling in a social security case that the Petitioner was not credible. Moreover, the Government questioned the Petitioner regarding an omission in documents regarding the purchase of the vehicle. The Petitioner acknowledge that she improperly omitted information from the purchase of the vehcile.

### 2. Drug Enforcement Agency Special Agent Christopher Barbour

Drug Enforcement Agency Special Agent Christopher Barbour testified regarding the techniques used to investigate the Defendant including the wiretap placed on his phone. Special Agent Barbour laid the foundation for the Government's Exhibit 1—a Notice of Interception of Oral or Electronic Communications. Exhibit 1 shows that the Defendant was sent, through certified mail on April 22, 2015, a notice that his phone had been wiretapped. Neither Exhibit 1 nor Special Agent

Barbour's testimony show that the Petitioner was given notice of this wiretap before the purchase of the vehicle. Indeed, Special Agent Barbour testified that the Petitioner was sent a notice that she was recorded on a wiretap, however, the Government conceded that this notice was sent in July 2015, after the purchase of the vehicle.

The Government introduced Exhibit 2—the Petitioner's phone records and the subpoena demanding those records. Special Agent Barbour testified that Exhibit 2 shows that the Petitioner called the Marshall County Sheriff's office and the Marshall County Prosecutor's office on April 24, 2015.

The Government introduced Exhibit 3—the Defendant's plea agreement—as a self authenticating court document. The *pro se* Petitioner did not object to the introduction of this evidence and the court did not question the Government as to why the statements within the document are not hearsay. The Defendant's plea agreement states that he agrees to forfeit the vehicle.

3. Carol Robinson and the Petitioner's Recorded Phone Call

Carol Robinson, the records custodian for Marshall County 9-1-1, laid the foundation for the Government's Exhibit 4— a recorded phone call made on April 24, 2015 from the Petitioner to the Marshall County Sheriff's office non-emergency line. The Government played the recording in open court. The recorded call shows that the Petitioner called the Marshall County Sheriff's office and indicated that the Defendant had asked her to call about a letter that he received. The Petitioner gave her name and asked for Kevin (last name unknown). The operator informed the Petitioner that Kevin was not in. The operator then called Chief Deputy Bill Helms. Chief Deputy Helms did not know what the call was in reference to, however, he instructed the operator to put the Petitioner

through and the recording ended.

### 4. Chief Deputy Bill Helms

Chief Deputy Bill Helms testified that he took a phone call from someone identifying herself as Nina Gyorko. The Petitioner had questions regarding the letter that her son received indicating that he had been wiretapped. Chief Deputy Helms testified that he was able to answer her questions and that he referred her back to the task force commander, however, there was no further testimony about what was discussed during this phone call.

On cross examination, the *pro se* Petitioner had one question for Chief Deputy Helms. The Petitioner asked Chief Deputy Helms whether there was an arrest warrant for her son at the time of the phone call and Chief Deputy Helms responded, "I don't believe so."

### 5. Jennifer Terry

Jennifer Terry, a legal assistant at the Marshall County Commission, laid the foundation for the Government's Exhibit 5. Exhibit 5 is a call log which shows that the Petitioner called the Marshall Count Prosecutor's office on April 24, 2015, inquiring about a wiretap on the Defendant.

### 6. The Petitioner's Rebuttal

The Petitioner rebutted the Government's case by testifying again. The Petitioner stated:

> With [the Defendant], this would not be that much out of the ordinary for him to call me and say 'see what's going on.' And it seems like that's what happened on that day. Evidently I didn't find anything out. I'm pretty sure he was not at my house that day, he must have called me. I don't remember.
>
> But this—as odd as it might seem to someone else, it would not be odd for him—and I'm sure I called the sheriff's department before—when asking if there was a warrant for him, because he is in trouble a lot and has been.

The Government cross examined the Petitioner:

Government: Mrs. Gyorko, what does the term wiretap mean to you?

> Petitioner: Listening in on phone calls.
>
> Government: And you know that's part of a criminal investigation, right?
>
> Petitioner: I would—I didn't see that. First time I saw it was when you showed me the receipt on that.
>
> And then when I got mine, which was like in July, I think. But that's the first time I have ever heard of anybody actually having it done.

**D.   Findings of Fact**

1. The Defendant received a notice on April 24, 2015, that a wiretap was placed on his phone.

2. After receiving the April 24, 2015 notice, the Defendant asked the Petitioner to inquire whether there were any outstanding warrants for his arrest. The Defendant indicated that this request was based on a letter he received.

3. The Defendant's request of the Petitioner was not unusual because the Defendant had a long history of brushes with the law.

4. On April 24, 2015, the Petitioner called the Marshall County Sheriff's office and the Marshall County Prosecutor's office to inquire whether there were any arrest warrants for the Defendant. The Petitioner was neither given information regarding the matter which was the subject of the Defendant's wiretap nor was she was led to believe that there was a warrant for the Defendant's arrest.

5. On May 1, 2015, the title to the vehicle was transferred from the Defendant to the Petitioner for value.

6. There was no evidence adduced at the hearing that the Petitioner knew that her son was engaged in distribution of heroin.

7. The Petitioner's testimonial evidence demonstrated that her son had a checkered past including brushes with the law. However, neither her son's past nor the events leading up to the indictment would have given the Petitioner cause to know of the nature of the offenses for which her son was ultimately indicted.

8. A finding in a nearly 20-year-old Social Security case that the Petitioner's testimony was not credible is irrelevant to this case. Likewise, an omission in a title transfer is irrelevant.

9. In the court's experience, mothers of sons with checkered pasts are often more clueless than everyone else.

**E.  Conclusions of Law**

1. The Defendant's plea agreement is a self-authenticating court document, however, the court improperly admitted it because it is hearsay and does not meet a hearsay exception. Therefore, the court did not consider Exhibit 3 in its analysis. Assuming arguendo that Exhibit 3 was admissible it does not impact the courts decision because whether the Defendant agreed to forfeit the vehicle in a later plea agreement is irrelevant to whether the Petitioner had reasonable cause to know the vehicle was subject to forfeiture at the time of the purchase.

2. The Government stipulates that the Petitioner has a legal interest in the vehicle and that she acquired that interest in exchange for value.

3. The Petitioner proved by a preponderance of the evidence that she could not reasonably have believed that the Defendant was engaged in the sort of behavior that would cause the vehicle to be subject to forfeiture.

### III.  RECOMMENDATION

Based on the foregoing, the court concludes that the petitioner has met her burden.

Accordingly, the court **RECOMMENDS THAT** the Petitioner's [ECF No. 181] Letter Motion be **GRANTED,** the vehicle be returned to her free of any liens or encumbrances imposed by the Government related to this matter, and the Petitioners duplicitive [ECF No. 199] Letter Motion be **DENIED AS MOOT.**

Any party who appears *pro se* and any counsel of record, as applicable, may, within fourteen (14) days after being served with a copy of this Report and Recommendation, file with the Clerk of the Court written objections identifying the portions of the Report and Recommendation to which objection is made, and the basis for such objection.

A copy of such objections should be submitted to the District Court Judge of Record. Failure to timely file objections to the Report and Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Report and Recommendation. 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985): *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).

The Clerk of the Court is **DIRECTED** to provide a copy of this Report and Recommendation to parties who appear *pro se* and all counsel of record, as applicable, as provided in the Administrative Procedures for Electronic Case Filing in the United States District Court for the Northern District of West Virginia.

DATED: October 5, 2016

*/s/ James E. Seibert*
**JAMES E. SEIBERT**
**U.S. MAGISTRATE JUDGE**